761 So.2d 361 (2000)
Elvira S. FEE, Appellant,
v.
David B. USLER, Appellee.
No. 5D99-2306.
District Court of Appeal of Florida, Fifth District.
March 31, 2000.
*362 Dawn Weiger O'Neill, Clearwater, for Appellant.
Daniel D. Mazar of Mead & Mazar, Winter Park, for Appellee.
GRIFFIN, J.
Elvira S. Fee ["Fee"] appeals an order temporarily transferring custody of her minor daughter to her former husband, David B. Usler ["Usler"]. Because of multiple procedural defects, we reverse.
Fee was divorced from Usler in 1990 and was awarded primary residential responsibility for the parties' then four-year-old daughter. Usler filed a verified motion for emergency temporary custody of his daughter on June 23, 1999. He alleged:
Mother (Elvira Fee) called my attorney Daniel Mazar informing him she wanted to give up all rights w/no visitation. I agreed to this. He [sic] attorney Dawn Weigel O'Neill then contacted my attorney, that she would draw up the papers, which she did. My ex-wife Elvira Fee has the papers and has not returned them as yet. This started April 1, 1999.
Usler asked that the custody be continued until it was made permanent. He asserted that the situation was an "emergency" in that:
My daughter has been in counseling with Sister Pat Barnett [sic]. She reported the case to Child Services. (This has been the 3rd time). My daughter (Stephanie) does not want to answer the phone when her mother calls. She is due to go back to her mothers [sic] on Tuesday the 29th and she does not want to return to that house. She [sic] in fear of returning. I'm asking for sole custody until this matter is settled.
Attached to the petition were two letters. One was an undated letter from the minor child to her mother:
Mom,
I'm writing this letter to let you know how I feel. I don't mean to hurt you but this is what I want until this is over and you've signed the papers so I live with my dad. I don't want to see you and I don't want to talk on the phone. Because right now I am very hurt and confused by everything and I just want to get away for some time and think. Please mom let me think with out interruptions and don't contact me for awhile. I'll contact you if needed.
Also attached to the petition was a letter from Sister Patricia Barnette, of Catholic Charities:
Dear Mr. Usler:
I am writing in response to your request for this letter during our phone conversation of June 11, 1999. After three counseling sessions to date with you and your daughter Stephanie, I would make the following recommendations.
Based on the fact that Stephanie is residing with you because her mother, Elvira Fee, said that Stephanie could no longer live with her and her husband, James Fee, and stated that she wanted no further contact with her daughter; and a few weeks later, Elvira Fee called and asked for Stephanie to spend the weekend with her, which she did:
1. Stephanie should not be allowed to visit her mother at her home or stay overnight there, because of the history of physical abuse against Stephanie by her stepfather, James Fee, which has been reported to DCF.

*363 2. It is very confusing and traumatic for a 12 year old girl to be told by her mother that she doesn't want to see Stephanie anymore and then for the mother to call several weeks later and ask to see her.
3. If Stephanie wants to have visits with her mother, I recommend that they are held at a neutral site under supervision.
Please contact me if you have any questions.
Without any notice to his former wife, Usler was awarded custody of his daughter on an emergency basis by order dated June 24, 1999. The order also enjoined the mother and the stepfather from having any contact, "telephone or otherwise," with the daughter. The order set the matter for hearing on July 12, 1999.
Fee filed a motion to dissolve the court's ex parte temporary order, arguing that: (1) there were no circumstances justifying a transfer of custody on an emergency basis; (2) the court was not entitled to modify custody unless its jurisdiction had been invoked by appropriate pleadings; (3) the order included an injunction, which had been entered without compliance with Florida Rule of Civil Procedure 12.610; and (4) she had been denied due process of law because the order had been entered without notice and an opportunity to be heard. Fee asked that the court's temporary order be dissolved in its entirety. The motion to dissolve was also set for hearing on July 12, 1999.
No testimony was offered by Usler at the hearing set by the court on the parties' motions. Usler's counsel argued that the parties had experienced numerous visitation problems since the divorce. Because of these problems, Usler had filed a motion asking that "Family Ties" control visitation. Usler's counsel stated that Fee had called him after he filed the motion and told him that she wanted to give custody to the father. She said that she would have her attorney draw up the papers. He said that the next thing he had learned was that:
Mr. Usler had placed the child in counseling, and apparently the child had made a number of disclosures to the counselor, that indicated she was quite upset, quite afraid, generally just a miserable child living in the environment with her mother.
Also, apparently the mother had told her that she was going to give her up and have no contact with her. Later she came back to her, and said she wasn't going to give her up if she had to pay child support.
He also represented that he had witnesses who would testify that the mother had come to the house in violation of the court's order against any contact. He also argued that the letter from the daughter showed:
[T]here's a distinct fear in there, fear and upset, indications that in the past there have been physical beatings, indications that there's a constant volley of verbal abuse from the stepfather.
Fee testified that she had called Usler's counsel on April 1, 1999 and told him she did not know what was in her daughter's best interests. She admitted that she had said that maybe it would be better for her daughter to live with her father, but she denied saying that she wanted to give up her rights.
The court refused to dissolve the order transferring temporary custody to the father, "based on the recommendations from the Catholic Charities' mental health counselor, Patricia Barnett" [sic] and because of "the daughter's expressions of fear concerning her mother and stepfather." The court later clarified that:
I'm finding that the child was in danger of imminent harm, or that the childnot that the child was going to be removed, but that the child was in danger of immediate harm.
The court appointed a guardian ad litem and indicated that it would set an expedited *364 hearing on the issue of custody once the guardian had spoken to both sides.
The showing necessary to effectuate a temporary change of custody was explained by this court in Wilson v. Roseberry, 669 So.2d 1152 (Fla. 5th DCA 1996):
In order to prevail on a request for a temporary modification of custody, the moving party must meet the burden of proving that (1) a substantial change in the condition of one or both of the parties has occurred, and (2) the best interests of the child will be promoted by the change. Antonetti v. Amato, 544 So.2d 286, 287 (Fla. 1st DCA 1989). Our court has explained that in order to conduct a proper inquiry into these two issues both parties must generally be given the opportunity for a full hearing where the parties and their witnesses are given an opportunity to testify. Vazquez v. Vazquez, 626 So.2d 318, 319 (Fla. 5th DCA 1993).
Id. at 1154. The Wilson court recognized, however, that entry of an emergency ex parte order temporarily changing custody might be warranted under certain circumstances, such as where "a child is threatened with physical harm or is about to be improperly removed from the state." Id., citing Gielchinsky v. Gielchinsky, 662 So.2d 732, 733 (Fla. 4th DCA 1995). However, the court noted that "the trial court should make every reasonable effort to allow both parties to be heard prior to issuing an emergency modification order." Wilson, 669 So.2d at 1154. Where prior notice is not possible, the Wilson court stated that "an opportunity to be heard should be provided as soon thereafter as possible." Id. Orders entered without such a showing and without adequate notice to the opposing party to present evidence on these issues are consistently reversed, in the absence of evidence of a sufficient emergency.[1]
In this case, the father's verified petition arguably established the existence of an emergency sufficient to support issuance of the initial ex parte order. The issue however, is the court's refusal to dissolve the ex parte order after the second hearing, at which both parties appeared. The proper procedure to utilize in such a case is essentially the same procedure followed upon issuance of a temporary injunction without notice. This procedure was described by the Florida Supreme Court in State v. Beeler, 530 So.2d 932 (Fla.1988):
After a trial court issues a temporary injunction, a defendant has two options. He may question the lack of prior notice by immediately appealing the injunctive order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(b), or he may *365 file a motion to dissolve with the trial court. With the latter option notice becomes irrelevant because the defendant is present, and the burden would be on the plaintiff to show that the complaint and supporting affidavits are sufficient to support the injunction.

Id. at 934 (emphasis supplied); accord Shea v. Central Diagnostic Services, Inc., 552 So.2d 344, 346 (Fla. 5th DCA 1989)(a plaintiff who has obtained ex parte relief based solely on allegations in its complaint cannot shift the burden to the defendant until it has established an evidentiary basis to support such relief).
At the second hearing, Usler failed to come forward with any competent evidence to support issuance of the temporary emergency order, and the failure to dissolve the court's emergency order in the absence of any evidence to support its issuance was an abuse of discretion. See also Swartsell v. Swartsell, 615 So.2d 825 (Fla. 4th DCA 1993) (trial court improperly resolved issue of temporary custody of parties' minor child without conducting evidentiary hearing); Crooks v. Crooks, 657 So.2d 918 (Fla. 4th DCA 1995) (unsworn report of guardian ad litem was insufficient basis upon which to predicate change of custody). The appealed order must accordingly be reversed. We remand for further evidentiary proceedings, if needed.
REVERSED and REMANDED.
THOMPSON, J., concurs.
ORFINGER, M., Senior Judge, concurs specially with opinion.
ORFINGER, M., Senior Judge, concurring.
I agree that the order appealed from must be reversed for the reasons set forth in the majority opinion. However, I would require an evidentiary hearing and would provide that the temporary aspect of the order remain in effect pending the outcome of the evidentiary hearing. See Swartsell v. Swartsell, 615 So.2d 825 (Fla. 4th DCA 1993).
NOTES
[1] See, e.g., Lewis v. Lewis, 725 So.2d 462 (Fla. 2d DCA 1999) (reversing order transferring temporary custody to father, where father's motion failed to satisfy requisites which would permit entry of emergency order); Simmons v. Simmons, 698 So.2d 947 (Fla. 4th DCA 1997) (reversing entry of ex parte order, and stating that in absence of true emergency, temporary custody orders entered without notice to one of the parties, or with insufficient notice, or with insufficient opportunity to be heard, must be reversed); Shaw v. Shaw, 696 So.2d 391 (Fla. 4th DCA 1997) (reversing ex parte order transferring temporary custody to wife and allowing her to relocate out of state on basis that she had gotten a job at a salary far in excess of her present earnings); Loudermilk v. Loudermilk, 693 So.2d 666 (Fla. 2d DCA 1997) (entry of emergency order granting temporary custody of child to mother without notice to father deprived father of procedural due process right, where petition for emergency order alleged no reason for failure to give father notice and mother failed to establish type of emergency which would have warranted ex parte emergency order temporarily modifying child custody; need to prevent child from changing schools was not sufficient emergency); Gielchinsky, 662 So.2d at 732 (reversing order changing custody to father on emergency basis which was based on evidence that mother had interfered with visitation rights; court stated that in absence of actual emergency, court should not have proceeded, but should have afforded both parties opportunity for full hearing on petition for modification); see also Hayman v. Hayman, 522 So.2d 531 (Fla. 2d DCA 1988) (father's desire to enter child into particular school was not emergency warranting immediate change of custody pursuant to divorce decree).