795 So.2d 113 (2001)
Florence BERGER n/k/a Florence Paton, Appellant,
v.
Francis L. BERGER, Appellee.
No. 5D00-1539.
District Court of Appeal of Florida, Fifth District.
August 10, 2001.
Rehearing Denied September 25, 2001.
*114 Maureen M. Matheson of Reinman, Matheson, Kostro & Vaughan, P.A., Melbourne, for Appellant.
Henry J. Martocci, Rockledge, for Appellee.
SHARP, W., J.
Florence Paton (formerly Florence Berger) appeals from two post-dissolution orders. One holds her in contempt for violating the amended final judgment of dissolution and a stay order, and the other provides her former husband, Francis Berger, with a ten-week "make-up" visitation with the parties' two children. We reverse both orders and remand for further proceedings consistent with the provisions *115 of the amended final judgment of dissolution, which we have now affirmed.[1]
The facts and proceedings in this too litigated case are complex. The Bergers have two young children, Emily, born in 1992 and Francis, born in 1994. In April 1996, the parties petitioned and counter-petitioned for dissolution. In August 1996, Florence alleged that Francis had sexually abused Emily and the Department of Children and Families filed a dependency action. The dependency petition was later amended to include domestic violence allegations. Francis' visitation with the children was restricted to supervised visitation at the Department.
The dependency and dissolution actions were consolidated and handled in turn by Judges Jacobus, Richardson, Lober and Dugan. The dependency petition was dismissed in February 1999 by Judge Lober. In October and November of 1999, Judge Dugan presided over a nine-day trial concerning child custody and visitation. Judge Dugan rendered his final judgment on January 21, 2000, which this court recently affirmed. He made the following findings:
4. SHARED PARENTAL RESPONSIBILITY: The parties shall have shared parental responsibility for the minor children. At this point, shared parental responsibility is limited to include major issues such as non-routine medical treatment, or changes in schools. Upon the completion of the Batterer's Intervention Program [by Francis], this Court will consider expanding the shared parental responsibility by way of Motion and without the need for formal modification proceedings.
* * *
6. VISITATION: Petitioner-Husband FRANCIS BERGER shall be limited to supervised visitation with the minor children until such time as he successfully completes the twenty-six (26) week Batterer's Intervention Program. Visitation at the Salvation Army Center shall be at such times as the Salvation Army is available for such visitation purposes. Following the completion of the Batterer's Intervention Program by Petitioner/Husband FRANCIS L. BERGER, this Court shall consider by Motion and without formal modification proceedings, the issue as to whether or not Petitioner/Husband FRANCIS L. BERGER shall receive additional visitation with the minor children of the parties. This Court cautions Petitioner/Husband FRANCIS L. BERGER to the effect that his completion of the Batterer's Intervention Program will not automatically provide him with additional visitation with the minor children, rather, this Court will determine at that time whether or not Petitioner/Husband FRANCIS L. BERGER should be permitted additional contact with the minor children of the parties.
Francis appealed the final judgment to this court. He also filed a motion in the lower court for a stay pending review. In March, Florence, a Canadian citizen, took the children to Canada. On March 24, she filed a motion for permission to relocate to Canada and a motion to hold Francis in contempt for failure to pay child support. Francis has consistently failed to pay child support during these proceedings, and he was many thousands of dollars in arrears.
On April 10, 2000, Judge Torpy conducted a hearing on Francis' motion to stay the *116 dissolution judgment pending appeal. Judge Torpy had not previously heard any evidence in this case. According to Francis' counsel, Henry Martocci, Francis had supervised visitation with the children from May 1998 to February 1999, but he refused to go to the Salvation Army for supervised visitation as required by the amended final judgment of dissolution. From February 1999 to November 1999, he had unsupervised visitation. Francis also refused to take the batterer's intervention course because he felt that would be an admission he has battered Florence, which he denies.
Judge Torpy granted a limited stay of the final judgment as to visitation. Francis was given alternative weekend visitation with the children to be supervised by Sandra Van Wart, Francis' girlfriend.
Judge Torpy also held a hearing on Florence's motion to relocate, and to hold Francis in contempt. Francis' attorney stipulated he was more than $24,000 behind in child support. He was required to pay $434 biweekly as child support. His employment history has been checkered. Francis had worked at Rockwell, then did part-time stucco work, then worked for Lockheed Martin, and taught a class at a community college, but at the time of the hearing he was unemployed. He lived with his girlfriend, who has two children in her home. They share expenses. However, despite the lack of steady employment, Francis was able to pay over $15,000 for transcripts of the dependency hearing and trial transcripts and $40,000 to $50,000 in attorney's fees.
Judge Torpy denied Florence's contempt motion, finding Francis lacked the present ability to pay. He also concluded he lacked jurisdiction to hear Florence's motion to relocate because of the appeal of the dissolution judgment.
On May 1, 2000, Francis filed a motion to hold Florence in contempt for failing to provide the children for visitation. A hearing was set for May 5th, but two days before, Florence's attorney withdrew as counsel. The hearing was continued based on a stipulation by Florence's newly hired attorney that she would bring the children to Brevard County for visitation by May 10th.
When Florence failed to bring the children to Florida by May 10th, Judge Torpy held a contempt hearing on May 12th. According to counsel for Florence, she tried to fly with the children to Florida, but she was denied entry into the United States. She had a green card, but was told it was only valid until the divorce was final. Testifying from Canada by telephone, she said she and the children went to Canada for spring break. She had enrolled the children in a Canadian school in April.
Since Florence was unable to enter the United States, Judge Torpy proposed transferring custody of the children to Francis. Florence's counsel objected on due process grounds, as Francis had not requested a change of custody and thus lacked notice. The hearing was reset for May 15. The judge said Florence could testify by telephone and he gave Francis leave to file a motion to transfer custody on an emergency basis.
On May 12, 2000, Francis filed a motion for temporary change of custody in primary residential responsibility. In the alternative, he sought authority for himself and his girlfriend to travel to Canada to bring the children back to Florida.
At the May 15 hearing, Florence did not testify. She had obtained Canadian counsel and he was not available to participate at that time. At the hearing, Francis testified Florence told him in March 1996 she would leave the country for Canada. She *117 did not tell him she was taking the children to Canada in March of 2000. Francis denied he had ever harmed the children. He admitted he did not exercise visitation with the children at the Salvation Army because the director had accused him of inappropriate sexual behavior. Sandra testified Francis did not behave inappropriately with her or with her children and she was willing to supervise visitation.
Also testifying at the hearing was a psychologist, Dr. Baker. Although she had not personally evaluated the children, Dr. Baker supervised the therapists and counselors for the children from November 1999 through March 2000. Dr. Baker testified that the children could be harmed if placed with their father. She believed that the children had been subjected to domestic violence and that one of the children had suffered sexual abuse. A kindergarten teacher testified the younger child suffered from separation anxiety (from his mother) and that on the days he had visitation with his father, he was very upset, to the extent she was unable to teach her class.
Judge Torpy held Florence in contempt for having removed the children to Canada and for failing to return them for visitation. He accepted Francis' testimony that he had not harmed the children. He also ruled that Florence's action caused a substantial change of circumstance, making it appropriate for him to modify visitation. He granted Francis ten weeks of visitation over the summer, to be supervised by Sandra.
We have jurisdiction to review these temporary orders. Remington v. Remington, 705 So.2d 920 (Fla. 4th DCA 1997); Alves v. Barnett Mortgage Co., 688 So.2d 459 (Fla. 4th DCA 1997); Bennett v. Bennett, 645 So.2d 32 (Fla. 5th DCA 1994). We also find that the record below fails to support the trial court's rulings.
With regard to the order changing custody or visitation provisions, Francis failed to establish that the best interests of the children would be promoted by the change. Fee v. Usler, 761 So.2d 361 (Fla. 5th DCA 2000); Wilson v. Roseberry, 669 So.2d 1152 (Fla. 5th DCA 1996); Vazquez v. Vazquez, 626 So.2d 318 (Fla. 5th DCA 1993). The best interests of the child is the primary concern in such matters,[2] and should be dealt with in a deliberate manner with a full hearing and notice to all parties. Wilson; Vazquez. The "emergency" hearing in this case lacked these qualities. But even so, the testimony of the psychologist and kindergarten teacher indicate the vital importance of such a hearing in this case and suggests the need to appoint a guardian ad litem.
Change of custody and visitation orders also must be supported by competent and substantial evidence that a change of circumstances have occurred. In this case, the trial judge found that Florence's move to Canada with the children constituted such a change. That well may be. However, the final judgment did not forbid Florence from moving to Canada and she sought a hearing before the court, to establish it was in her, as well as the children's best interests, to make the move. Dobbins v. Dobbins, 584 So.2d 1113 (Fla. 1st DCA 1991), rev. denied, 598 So.2d 75 (Fla.1992). This the trial judge refused to hear, and by granting Francis extensive *118 visitation rights and staying the final judgment, it placed Florence in a position nearly impossible for her to avoid non-compliance with the final judgment. But the substance of this issue has not been addressed on the merits.
It is well settled that a contempt order should not be the basis for a change of custody (or extensive visitation) order. Laloggia-Vonhegel v. Vonhegel, 732 So.2d 1131 (Fla. 2d DCA 1999); Moody v. Moody, 721 So.2d 731 (Fla. 1st DCA 1998); Pace v. Solomon, 715 So.2d 1155 (Fla. 5th DCA 1998); Gielchinsky v. Gielchinsky, 662 So.2d 732 (Fla. 4th DCA 1995). The purpose of a civil contempt proceeding is to obtain compliance with the court's initial order. The sanction of changing custody or visitation does not coerce compliance. In fact, it may penalize the children for their parents' contumacious conduct, a result opposite from their best interests.
With regard to the contempt order, we also find no solid basis to support it. The court relied on the shared parental responsibility portion of the amended final judgment, but that was not pled by Francis. Further, there was no prohibition in the final judgment against relocating to Canada. Florence sought to address the relocation issue which could also have addressed revised visitation for Francis, but the court refused to make a ruling on that issue. Rather the court stayed the final judgment provision concerning visitation (rights Francis had not been exercising because it required supervision at the Salvation Army and taking a batterers' intervention course), and replaced it with much more generous visitation rights for Francis ones allegedly impossible for Florence to comply with since she was already in Canada. At best, the only basis for the contempt was failure to return the children on one occasion from Canada, to comply with the temporary visitation order.
In Keitel v. Keitel, 716 So.2d 842 (Fla. 4th DCA 1998), the court held that a mother could not be held in contempt because she moved from Florida to New York where the final dissolution judgment did not contain an express provision prohibiting relocation. Although the father's visitation rights were obstructed, the court held that implied or inherent provisions of a final judgment (shared parental responsibility) cannot serve as a basis for an order of contempt. Further, the mother in Keitel had not filed a motion with the court to resolve the relocation issue, and under that umbrella, redesign visitation rights for the non-primary residential parent.
In sum, we reverse both temporary orders being appealed in this case. Because another panel of this court has now affirmed the final judgment of dissolution, none of its provisions are stayed or superceded. Any changes or amendment to the final judgment regarding visitation, relocation, or change of custody/primary residential parent should be accomplished through the normal legal process of filing petitions for modification, giving due notice to both parties, and a determination based on the best interests of the children, after a full hearing on both sides.
REVERSED.
PETERSON and ORFINGER, R.B., JJ., concur.
NOTES
[1] Berger v. Berger, 788 So.2d 407 (Fla. 5th DCA 2001).
[2] See Manuel v. Manuel, 489 So.2d 183 (Fla. 1st DCA 1986) (where final dissolution judgment provided for visitation every third weekend, court's action in awarding four-month, extended visitation to father after mother relocated to Texas constituted a substantial modification of visitation which required a consideration of the best interests of the child).